# UNITED STATES DISTRICT COURT

# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FOUNDER COLLECTIVE GP II, LLC, | Case No. |
| Movant, | **MEMORANDUM OF LAW IN SUPPORT OF FOUNDER COLLECTIVE GP II, LLC'S MOTION TO QUASH SUBPOENA** |
| v. | |
| COSTAR GROUP, INC. and COSTAR REALTY INFORMATION, INC., | |
| Respondent. | |

## **TABLE OF CONTENTS**

I.      INTRODUCTION ...........................................................................................................1

II.     BACKGROUND .............................................................................................................2

     A.      Founder Collective and the Underlying Litigation ..................................................2

     B.      CoStar withdraws its original subpoena to Founder Collective...............................3

     C.      CoStar renews its overbroad and harassing subpoena to Founder
          Collective. ..............................................................................................................4

     D.      The meet-and-confer process. ..................................................................................6

III.    LEGAL STANDARD......................................................................................................7

IV.     ARGUMENT ..................................................................................................................8

     A.      CoStar's requests are irrelevant and cumulative of party discovery........................9

          1.      CoStar improperly targets Founder Collective's internal documents
               and analyses. .............................................................................................9

          2.      The Renewed Subpoena seeks an overbroad set of irrelevant
               documents concerning CREXi's business. ...............................................11

          3.      To the extent CoStar seeks relevant documents, they should be
               sought from CREXi rather than burdening nonparty Founder
               Collective. ...............................................................................................14

     B.      CoStar's Renewed Subpoena is unduly burdensome.............................................16

     C.      The Renewed Subpoena should be quashed because CoStar's conduct
          indicates that the subpoena has been issued for the improper purpose of
          harassing Founder Collective and disrupting its business relations with
          CREXi.....................................................................................................................17

     D.      Founder Collective should be awarded reasonable attorneys' fees. .......................18

V.      CONCLUSION...............................................................................................................18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*,
  300 F.R.D. 406 (C.D. Cal. 2014) ...............................................................................8, 14, 17

*Angioscore, Inc. v. Trireme Medical. Inc.*,
  2014 WL 6706898 (N.D. Cal. Nov. 25, 2014) ........................................................................16

*Baxalta Inc. v. Genentech, Inc.*,
  2016 WL 11529803 (N.D. Cal. Aug. 9, 2016) .....................................................................9, 16

*Bogosian v. Woloohojian Realty Corp.*,
  323 F.3d 55 (1st Cir. 2003) .............................................................................................................8

*Buckeye Ventures, Inc. v. Trafalgar Cap. Specialized Inv. Fund, Luxembourg*,
  2009 WL 10667900 (S.D. Fla. Dec. 7, 2009) ..........................................................................12

*Casun Invest, A.G. v. Ponder*,
  2019 WL 2358390 (D. Nev. June 4, 2019) ...............................................................................18

*Compaq Computer Corp. v. Packard Bell Elec., Inc.*,
  163 F.R.D. 329 (N.D. Cal. 1995) ................................................................................................8

*Duong v. Groundhog Enterprises, Inc.*,
  2020 WL 2041939 (C.D. Cal. Feb. 28, 2020) ...................................................................14, 18

*Free Stream Media Corp. v. Alphonso Inc.*,
  2017 WL 11632962 (C.D. Cal. May 4, 2017) ..........................................................................16

*Genus Lifesciences Inc. v. Lannett Co., Inc.*,
  2019 WL 7313047 (N.D. Cal. Dec. 30, 2019) .........................................................................14

*Green v. Baca*,
  226 F.R.D. 624 (C.D. Cal. 2005) .................................................................................................9

*Heilman v. Lyons*,
  2010 WL 5168871 (E.D. Cal. Dec. 13, 2010) .........................................................................14

*IP Telesis Inc. v. Velocity Networks Inc.*,
  2012 WL 12886967 (C.D. Cal. Nov. 5, 2012) .........................................................................13

*Littlefield v. NutriBullet, L.L.C.*,
  2018 WL 5264148 (C.D. Cal. Jan. 22, 2018) .........................................................................7, 8

*Mattel, Inc. v. Walking Mountain Prods.*,
   353 F.3d 792 (9th Cir. 2003) ................................................................8, 17

*Mfg. Automation & Software Sys., Inc. v. Hughes*,
   2017 WL 5641120 (C.D. Cal. Sept. 21, 2017) ........................................7

*Moon v. SCP Pool Corp.*,
   232 F.R.D. 633 (C.D. Cal. 2005) ..............................................8, 14, 16

*Morehead v. City of Oxnard*,
   2023 WL 3431277 (C.D. Cal. Jan. 13, 2023) ..........................................8

*NuVasive, Inc. v. Jones*,
   2018 WL 6062416 (S.D. Cal. Nov. 20, 2018) ........................................14

*Oyenik v. Corizon Health Inc.*,
   2014 WL 12787872 (D. Ariz. Nov. 20, 2014) ........................................17

*Rawcar Grp., LLC v. Grace Med., Inc.*,
   2014 WL 12199977 (S.D. Cal. June 26, 2014) ......................................13

*Soto v. Castlerock Farming & Transp., Inc.*,
   282 F.R.D. 492 (E.D. Cal. 2012) ..........................................................14

*Starz Ent., LLC v. MGM Domestic Television Distribution LLC*,
   2022 WL 2230129 (C.D. Cal. May 31, 2022) ......................................10

*Straight Path IP Group, Inc. v. Blackberry Ltd.*,
   2014 WL 3401723 (N.D. Cal. July 8, 2014) ........................................18

*Tresona Multimedia, LLC v. Legg*,
   2015 WL 4911093 (N.D. Ill. 2015) ......................................................14

*United States v. Sanmina Corp.*,
   968 F.3d 1107 (9th Cir. 2020) ..............................................................13

*Visto Corp. v. Smartner Info. Sys., Ltd.*,
   2007 WL 218771 (N.D. Cal. Jan. 29, 2007) ..................................10, 11

*Wimo Labs, LLC v. eBay Inc.*,
   2016 WL 11507381 (C.D. Cal. Nov. 1, 2016) ..................................8, 14

**Other Authorities**

Fed. R. Civ. P. 26(b)(1) ..............................................................................7

Fed. R. Civ. P. 45(d)(1) ............................................................................18

Fed. R. Civ. P. 45(d)(3)(A)(iv) ..................................................................7

## I.      INTRODUCTION

Respondent CoStar Group, Inc. and CoStar Realty Information, Inc. ("CoStar") has served Founder Collective GP II, LLC ("Founder Collective") with an overbroad subpoena seeking irrelevant information—for a second time. CoStar purports to seek documents for use in its lawsuit for copyright infringement and misappropriation against Commercial Real Estate Exchange, Inc. ("CREXi") in the Central District of California, No. 2:20-cv-08819 CMB (ASx) (the "Underlying Litigation").[1] But Founder Collective is merely an investor in CREXi and has no connection to the allegations in the Underlying Litigation.

CoStar originally served a 643-page subpoena on Founder Collective and other CREXi investors in December 2022. CoStar demanded more than 35 broad categories of documents over a span of eight years that were either entirely irrelevant, or cumulative of discovery already sought from CREXi. CoStar's subpoenas also attached hundreds of self-serving documents that CoStar obtained from foreign legal proceedings in an apparent effort to discredit CREXi with its investors. When threatened with sanctions over these improper and harassing subpoenas, CoStar withdrew them.

CoStar's second subpoena to Founder Collective is déjà vu. Although CoStar has now stripped the documents from foreign proceedings and decreased the number of document requests, the subpoena remains overbroad and cumulative of party discovery in the Underlying Litigation. CoStar requests eleven broad categories of documents over a span of more than eight years with a scope almost equivalent to the original subpoena. Indeed, each request seeks "[a]ll Documents and Communications" regarding broad topics such as "CoStar" and "CREXi" and targets sensitive internal Founder Collective documents regarding its internal analyses and investment decision-making process. As before, CoStar's requests encompass documents that are irrelevant to the claims and defenses in the Underlying Litigation, or are—as CoStar has

---

[1] CoStar has agreed that this Motion to Quash is suitable for transfer to the United States District Court for the Central District of California under Fed. R. Civ. P. 45(f), to be heard by the Special Master (Hon. Suzanne H. Segal) assigned to hear discovery matters in the Underlying Litigation. Accordingly, Founder Collective expects that the parties will in short order file a stipulation to transfer this matter to the Central District of California.

conceded in meet-and-confer discussions—cumulative of discovery CoStar has already sought from CREXi, but has apparently abandoned. These requests harass and impose an undue discovery burden on Founder Collective.

The Court should quash the subpoena, and because CoStar has not taken reasonable steps to avoid an undue burden on Founder Collective, CoStar should be ordered to pay the reasonable attorneys' fees incurred in bringing this motion.

## II.    BACKGROUND

### A.    Founder Collective and the Underlying Litigation

Founder Collective is a venture capital firm that specializes in seed stage investments for technology companies. *See* Declaration of Joseph DeFilippi ("DeFilippi Decl.") ¶ 2. With a consistently small team and small funds, Founder Collective has invested in hundreds of seed-stage technology startups including companies like PillPack, The Trade Desk, and Airtable. *Id*. Founder Collective originally invested in CREXi's Series Seed financing in May 2015. *Id.* ¶ 4. Founder Collective is not and has never been involved in the day-to-day operations of CREXi. *Id.* ¶ 5. Founder Collective's sole connection to CREXI is as an early investor. No Founder Collective personnel has been a director, officer, or employee of CREXi or involved in its operations, let alone the particulars of CREXi's methodologies for obtaining images and data from brokers or listings. *Id.* ¶¶ 5-6.

The Underlying Litigation is the matter captioned *CoStar Group, Inc. v. Commercial Real Estate Exchange, Inc.*, No. 20-cv-008819 (C.D. Cal.), which is pending in the Central District of California. CoStar and CREXi both operate in the markets of commercial real estate listing, information, and auction services. CoStar alleges that CREXi has infringed its copyrights to images of commercial real estate buildings, misappropriated the commercial real estate data on CoStar's websites, and accessed those websites in violation of its terms of service. *See* Underlying Litigation, Second Amended Complaint, Dkt. 351 ("SAC") at ¶¶ 4-5, 192-255. CREXi has asserted numerous defenses including the fact that its property listings are created and maintained either by brokers or at their direction, meaning that CREXi engaged in no

volitional conduct related to broker-created listings and qualifies for the safe harbor under the Digital Millennium Copyright Act ("DMCA"). CREXi has also asserted counterclaims for CoStar's use of CREXi's trademark in advertisements for CoStar. Underlying Litigation, Dkt. 162 at 92-93.

Founder Collective is not a party to the CoStar lawsuit or any other lawsuit involving CoStar. Founder Collective is not mentioned anywhere in the SAC, and there are no allegations that Founder Collective is involved in or aware of the conduct alleged in the SAC.

### B.   CoStar withdraws its original subpoena to Founder Collective.

On December 14, 2022, CoStar served on Founder Collective and several other CREXi investors a 643-page subpoena seeking the production of more than 35 categories of documents covering a timespan of over eight years with a return date of January 4, 2023, just after the holidays. *See* Declaration of Patrick Hein ("Hein Decl.") Ex. 1 (CoStar Subpoena to Founder Collective (December 14, 2022) (the "Original Subpoena")). The Original Subpoena demanded broad swaths of information that were irrelevant to the claims and defenses in the Underlying Litigation or were cumulative of discovery already sought from CREXi. The Original Subpoena included, for example, requests seeking documents related to Founder Collective's investments in CREXi, all documents and communications about CoStar, and all drafts and notes regarding Founder Collective's public statements about CREXi. *Id.* at 10 (Request Nos. 1, 5, 6). Some of the requests asked for documents related to specific allegations in CoStar's foreign lawsuits against CREXi vendors—a topic that CoStar had no reasonable basis to believe were in any investor's possession. *Id.* at 15-16 (Request Nos. 25-29). Those requests appear to have been included as pretext to attach hundreds of pages of self-serving documents to the subpoenas that CoStar had obtained from its foreign lawsuits against CREXi's vendors.

During the meet-and-confer process, CREXi informed CoStar that it would seek a protective order and sanctions if CoStar did not withdraw its subpoenas to Founder Collective and other CREXi investors. Hein Decl. ¶ 4. In response, on January 24, 2023, CoStar withdrew

its Original Subpoena.[2] *Id.* Ex. 2 at 1 (CoStar email to undersigned counsel (January 24, 2023)). CoStar stated that it reserved the right to serve "narrowed subpoenas" on Founder Collective and other CREXi investors, "particularly if CREXi continues to refuse to produce relevant investor-related documents and communications in its possession." *Id.*

### C. CoStar renews its overbroad and harassing subpoena to Founder Collective.

On May 30, 2023, CoStar renewed its subpoena to Founder Collective and another CREXi investor, Jackson Square Ventures, LLC ("JSV").[3] Hein Decl. Ex. 3 (CoStar Subpoena to Founder Collective (May 30, 2023) (the "Renewed Subpoena")). Like the Original Subpoena, the Renewed Subpoena is also harassing—encompassing eleven invasive, overbroad, and irrelevant document requests over an eight-year period.[4] Although the Renewed Subpoena omits the hundreds of pages of foreign litigation materials and reduces the total number of requests overall, the changes are largely cosmetic and have not "narrowed" the subpoenas in any material way. The requests at issue seek an irrelevant and overbroad set of documents encompassing every document and communication related to CREXi and CoStar, and including Founder Collective's internal and confidential communications regarding its investment analyses and decision making. And even though party discovery in the Underlying Litigation only goes back as far as 2016, CoStar seeks a full additional year of discovery from Founder Collective with a

---

[2] After being served with CoStar's Original Subpoena in December 2022, Founder Collective through its then-counsel asserted a number of objections to the Original Subpoena—including that the requests were overbroad and unduly burdensome and sought documents that were irrelevant or already available to CoStar from CREXi—while also discussing with CoStar the potential production of a limited set of responsive documents, which discussions ceased when CoStar withdrew the Original Subpoena on January 24, 2023. DeFilippi Decl. ¶ 7.

[3] In early May 2023, CoStar contacted Founder Collective's then-counsel to discuss Founder Collective potentially voluntarily producing certain documents in connection with the Underlying Litigation.  On May 22, 2023, Founder Collective's then-counsel declined to voluntarily produce any documents because both parties to the Underlying Litigation had not agreed to the informal discovery process CoStar was proposing, while also noting that CoStar was again seeking documents and communications that were already available to CoStar from CREXi. DeFilippi Decl. ¶ 8.

[4] CoStar also chose to serve the Renewed Subpoena on Founder Collective in a harassing manner: even though CoStar was aware that Founder Collective was represented by counsel, before awaiting Founder Collective's then-counsel's confirmation that it would accept service and only hours after sending the Renewed Subpoena to Founder Collective's then-counsel via e-mail, CoStar chose to effectuate personal service on Founder Collective. DeFilippi Decl. ¶ 9.

date range of January 1, 2015 through the present. In full, the topics are as follows:

| No. | Documents Requested |
| --- | --- |
| 1 | All Documents and Communications, whether internal, between You and CREXi, or otherwise, Regarding any investment You made, or considered making, in CREXi, and any return you have received on Your investment(s). For the avoidance of doubt, this Request encompasses, without limitation, any business models, road show presentations, pitch books, business plans, forecasts, budgets, variance analyses, or promotional investment materials You received or considered in connection with any potential or actual investments in CREXi, and any market study information Regarding the commercial real estate market that You considered in connection with any potential or actual investment in CREXi. |
| 2 | To the extent not encompassed by Request No, 1, Documents sufficient to show Your investments in, loans to, and/or financing of, CREXi, including the nature and amount (in percentage and dollars, where applicable), date, and terms of each such investment, loan, or financing. |
| 3 | All Documents Regarding Your past, present, or future valuation of CREXi, including any business model, forecasts, business plans, budgets, variance analyses, reports, assessments, or other Documents or Communications You received from any financial advisors or third parties concerning such valuation, or that You considered in determining such valuation. For the avoidance of doubt, this Request encompasses, without limitation, Documents and Communications Regarding (i) any actual or perceived benefits, costs, and/or risks, whether monetary or nonmonetary, associated with CREXi's entry, growth, or success in the commercial real estate industry; and (ii) the metrics You used to value CREXi, such as increases in CREXi's Listings, as well as how such metrics may be (or have been) achieved. |
| 4 | All Documents and Communications containing or reflecting advice and direction You have provided to CREXi concerning its business model, operations, or strategy for obtaining, creating, developing, or publishing Listings. |
| 5 | All Documents and Communications, whether internal, between You and CREXi, or otherwise, created or received *after* Your investment in CREXi, Regarding CREXi. For the avoidance of doubt, this Request encompasses, without limitation, internal Documents Regarding CREXi's (i) annual reports; (ii) business plans; (iii) comparisons of financial budgets to end results; (iv) growth milestones; (v) performance targets; and (vi) obstacles impeding growth, as well as any assessments or analyses Regarding the foregoing. |
| 6 | All Documents and Communications, whether internal, between You and CREXi, or otherwise, Regarding CoStar. For avoidance of doubt, this Request encompasses, without limitation, all Documents Regarding the copying, scraping or display of CoStar Data or CoStar Photographs by, with the involvement of, at the behest of, or for the benefit of CREXi, whether directly or indirectly, and Your knowledge of the same. |
| 7 | All Documents and Communications, whether internal, between You and CREXi, or otherwise, Regarding the Action or any other litigation of which You aware that implicates or involves CoStar and CREXi or a party hired by CREXi. For the avoidance of doubt, this Request encompasses, without limitation, Communications on such topics between CREXi's outside counsel and You or Your outside counsel. |
| 8 | All Documents and Communications, whether internal, between You and CREXi, or otherwise, Regarding CREXi's use of Agents in obtaining, creating, developing, publishing, and/or maintaining any Listing on the CREXi Website, or sourcing, |

| No. | Documents Requested |
|-----|---------------------|
|  | copying, cropping, uploading or downloading photographs of commercial real estate. For the avoidance of doubt, this Request encompasses, without limitation, Documents and Communications reflecting: (i) any recommendations and/or identifications of Agents for CREXi's consideration; (ii) any advice or guidance You provided to CREXi Regarding CREXi's use of Agents; and (ii) and discussions with You regarding the work undertaken by Agents for CREXi. |
| 9 | All Documents and Communications, whether internal, between You and CREXi, or otherwise, Regarding the steps CREXi has taken to protect or vindicate its own intellectual property rights, or any accusations that CREXi has misappropriated or infringed another person's intellectual property. |
| 10 | All Documents Regarding CREXi's actual or contemplated use in the United States of actually or potentially copyrighted images, data, trademarks, trade names, or information copied from websites, without permission from their owner or website owner/operator, and Your knowledge of the same. |
| 11 | All Documents Regarding the copying or scraping of data or images by, with the involvement of, at the behest of, or for the benefit of CREXi, whether directly or indirectly, or Your knowledge of the same. |

### D.     The meet-and-confer process.

After service of the Renewed Subpoena, Founder Collective met and conferred with

CoStar on June 7, 2023, and June 14, 2023. Hein Decl. ¶ 6. During the June 14, 2023 meet-and-

confer session, Founder Collective requested CoStar to withdraw the subpoena because the

document requests are overbroad and unduly burdensome, seek irrelevant documents or

documents better sought from CREXi, and involve a scope similar to the withdrawn Original

Subpoena. *Id.* CoStar refused to withdraw the subpoena. *Id.* CoStar explained by email the

following day that "broadly speaking, CREXi is refusing to produce the materials sought by the

subpoena"—a tacit admission that CoStar's subpoena seeks documents it could obtain in party

discovery from CREXi. *Id.* Ex. 4 at 1 (CoStar email to undersigned counsel (June 15, 2023)).

CoStar also suggested that Founder Collective and JSV "produce purely internal materials," and

that CREXi "produces the balance" of the requested documents. *Id.* CoStar has never proffered

any viable theory of relevance for Founder Collective's "purely internal materials" and those

highly confidential and proprietary materials are irrelevant.

On July 17, 2023, Founder Collective served on CoStar responses and objections to the

Renewed Subpoena. *Id.* Ex. 5 (Founder Collective's Responses and Objections to CoStar's

Renewed Subpoena (July 17, 2023)). On July 21, 2023, during another meet-and-confer session with CoStar, Founder Collective reiterated its objections to the subpoena and again requested that CoStar withdraw the subpoena. *Id.* ¶ 9. CoStar again refused to the withdraw the subpoena. *Id.* Founder Collective stated its intention to move to quash the Renewed Subpoena. *Id.*

Although Founder Collective initially brings this motion to quash in the District of Massachusetts under Federal Rule of Civil Procedure 45(d)(3), CoStar has agreed to stipulate to transfer the motion to the Central District of California to be heard by the Special Master assigned to the Underlying Litigation.[5] Founder Collective expects that the parties will file a stipulation to transfer in short order.

### III.   LEGAL STANDARD

Federal Rule of Civil Procedure 45 governs the subpoena to nonparty Founder Collective. "The standards in Rule 26(b) regarding the permissible scope of discovery 'appl[y] to the discovery that may be sought pursuant to Rule 45.'" *Littlefield v. NutriBullet, L.L.C.*, 2018 WL 5264148, at *3 (C.D. Cal. Jan. 22, 2018). Under Rule 26, a party can only request in discovery documents that are relevant to its claims and defenses and proportional to the needs of the case, "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). The proportionality requirement "is designed to avoid . . . sweeping discovery that is untethered to the claims and defenses in litigation." *Mfg. Automation & Software Sys., Inc. v. Hughes*, 2017 WL 5641120, at *5 (C.D. Cal. Sept. 21, 2017).

As to nonparty subpoenas, the court "***must*** quash or modify a subpoena that . . . subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv) (emphasis added). "Although

---

[5] Because Founder Collective expects that this motion will be heard in the Central District of California, Founder Collective primarily relies on precedent from the Ninth Circuit and Central District. Nevertheless, even if this motion were heard in the District of Massachusetts, Founder Collective understands that the law is not meaningfully different, and the result would be the same.

irrelevance is not among the litany of enumerated reasons for quashing a subpoena found in Rule 45, courts have incorporated relevance as a factor when determining motions to quash a subpoena." *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005). Indeed, "the moving party has the burden of persuasion . . . , but the party issuing the subpoena must demonstrate that the discovery sought is relevant." *Morehead v. City of Oxnard*, 2023 WL 3431277, at *2 (C.D. Cal. Jan. 13, 2023); *see also Compaq Computer Corp. v. Packard Bell Elec., Inc.*, 163 F.R.D. 329, 335-36 (N.D. Cal. 1995) ("[I]f the sought-after documents are not relevant, nor calculated to lead to the discovery of admissible evidence, then any burden whatsoever imposed [] would be by definition 'undue.'").

An evaluation of "undue burden" depends upon factors such as "relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Moon*, 232 F.R.D. at 637. "Concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs in a Rule 45 inquiry." *Littlefield*, 2018 WL 5264148, at *3 (internal quotations and alterations omitted). As a result, "[c]ourts are particularly reluctant to require a non-party to provide discovery that can be produced by a party." *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 410 (C.D. Cal. 2014); *see also Wimo Labs, LLC v. eBay Inc.*, 2016 WL 11507381, at *2 (C.D. Cal. Nov. 1, 2016) ("[D]iscovery that can be obtained from parties should be directed to parties."). A subpoena may also be quashed if it has been issued for an improper purpose to "annoy[] and harass[] and not really for the purpose of getting information." *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 814 (9th Cir. 2003); *see also Bogosian v. Woloohojian Realty Corp.*, 323 F.3d 55, 66 (1st Cir. 2003) (a factor in quashing a subpoena is whether the "subpoena was issued primarily for purposes of harassment. . . . .").

## IV.    ARGUMENT

CoStar's Renewed Subpoena seeks irrelevant information that imposes a disproportionate and undue burden on nonparty Founder Collective. The Court should quash the subpoena for

three independent reasons. First, the documents CoStar seeks from Founder Collective are irrelevant or, as CoStar has conceded, are better sought from CREXi. Second, the vastly overbroad, all-encompassing document requests in the subpoena are unduly burdensome. Third, CoStar's conduct indicates that it has issued the subpoena for an improper purpose of harassment, and not out of a legitimate need for relevant discovery. And because CoStar has failed to take reasonable steps to avoid imposing undue burden or expense on Founder Collective as a nonparty, the Court should award Founder Collective its reasonable attorneys' fees.

### A.    CoStar's requests are irrelevant and cumulative of party discovery.

As the "party issuing the subpoena" CoStar must, as an initial matter, "demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings." *Green v. Baca*, 226 F.R.D. 624, 654 (C.D. Cal. 2005). But each of CoStar's document requests are broadly drawn to seek irrelevant information: they either seek (1) Founder Collective's internal analyses that are irrelevant to an evaluation of *CREXi*'s conduct; or (2) seek an overbroad set of documents that are in CREXi's possession, custody or control. To the extent any documents in this latter category are relevant, CoStar must seek them from CREXi directly, but CoStar has apparently abandoned its attempts to do so. CoStar's overbroad subpoena should be quashed in its entirety because there is no "obligation of a third-party or this Court to attempt to re-draft highly overbroad, disproportionate subpoenas." *Baxalta Inc. v. Genentech, Inc.*, 2016 WL 11529803, at *8 (N.D. Cal. Aug. 9, 2016).

### 1.    CoStar improperly targets Founder Collective's internal documents and analyses.

Founder Collective is not a party to CoStar's lawsuit and there are no allegations of wrongdoing on Founder Collective's part. Yet each of CoStar's eleven requests reaches beyond documents pertaining to CREXi or received from CREXi, and instead fishes for highly confidential and competitively sensitive information about Founder Collective's ***internal*** actions, knowledge, investment decision making, and analyses—all of which are irrelevant to CoStar's

lawsuit against CREXi.[6]

The decision in *Starz Ent., LLC v. MGM Domestic Television Distribution LLC* is instructive. 2022 WL 2230129, at *8 (C.D. Cal. May 31, 2022). In that case, the district court quashed a subpoena to nonparty potential investors. The court explained that liability for the breach of contract claim in that case would be determined based on "evidence of performance, or lack thereof . . . and an assessment of damages flowing from that alleged breach." *Id.* By contrast, "[c]ommunications reflecting what potential investor(s) said or thought about the acquisition of the Pictures is wholly irrelevant to whether [the defendant] is liable for a breach of its exclusivity obligations under the contracts, nor do such communications assist in determining damages in this case." *Id.* And in *Visto Corp. v. Smartner Info. Sys., Ltd.*, the district court addressed the defendant's subpoena to a third-party venture capital firm seeking that firm's analyses of the plaintiff's business. 2007 WL 218771, at *4 (N.D. Cal. Jan. 29, 2007). The court held that even if the commercial success of the plaintiff's business were relevant, "a venture capital firm's opinions about and analysis of" its investment were not. *Id.* There was "no reason to believe" that the firm had documents regarding the plaintiff's business that were not publicly available or available from the party itself, and the opinions and analyses of the venture capital firm were not "independently relevant." *Id.*

The *Starz* and *Visto* cases are directly on point. Liability and damages in the Underlying

---

[6] Focusing on Founder Collective's "internal" documents, CoStar demands over an eight-year period, "[a]ll Documents and Communications" regarding any Founder Collective investment in CREXi—including any and all information Founder Collective considered as part of that investment decision (Request No. 1); the amounts and nature of any Founder Collective investment in CREXi (Request No. 2); all documents regarding any Founder Collective valuation of CREXi (Request No. 3); any advice Founder Collective provided to CREXi about its business (Request No. 4); all of Founder Collective's internal documents and communications regarding CREXi after Founder Collective's investment (Request No. 5); all of Founder Collective's internal documents and communications regarding CoStar (Request No. 6); all of Founder Collective's internal documents and communications regarding any lawsuit involving CoStar or CREXi (Request No. 7); all of Founder Collective's internal documents and communications, and advice provided to CREXi, regarding use of third parties in its business (Request No. 8); all Founder Collective internal documents regarding CREXi's intellectual property policies (Request No. 9); and Founder Collective's "knowledge" and internal documents regarding CREXi's use of others' intellectual property or its copying or scraping of data or images (Request Nos. 10 and 11).

Litigation will be determined based on an evaluation of CREXi's conduct and whether it satisfies the elements of CoStar's claims (*i.e.*, copyright infringement, misappropriation, and breach of contract), and an assessment of damages to CoStar flowing from those alleged claims. Founder Collective's internal knowledge, analyses, and conduct are not at issue, and are irrelevant to **CREXi's** conduct. CoStar is thus not entitled to information on Founder Collective's decision making on its investment in CREXi and its valuation of that investment (Request Nos. 1-3, 5)— Founder Collective's "opinions and analyses" are not "independently relevant." *Visto*, 2007 WL 218771, at *4. Nor is CoStar entitled to Founder Collective's "advice" to CREXi on its business or use of outside vendor services (Request Nos. 4, 8) because it is CREXi's conduct, not advice it received, that is relevant to the Underlying Litigation. Nor is a nonparty's internal discussions and analyses regarding CoStar and its litigation relevant to evaluating CREXi's conduct (Request Nos. 6, 7). Founder Collective's "knowledge" of any CREXi conduct is likewise irrelevant to CREXi's knowledge and conduct (Request Nos. 10-11). The Court should quash CoStar's attempt to probe these irrelevant topics that would encompass competitively sensitive and highly confidential internal Founder Collective documents.[7]

### 2. The Renewed Subpoena seeks an overbroad set of irrelevant documents concerning CREXi's business.

To the extent the requests seek information other than Founder Collective's internal opinions and analyses, they seek an overbroad set of documents about CREXi that are far beyond what is relevant to the Underlying Litigation. To the extent any of these documents are relevant and proportional to the needs of the case, CoStar must seek to obtain them from CREXi in the first instance. Founder Collective understands that CREXi has objected to many of the requested documents on relevance grounds and CoStar has not moved to compel those requests. Hein Decl. ¶ 10. The following examples demonstrate the overbreadth of these requests:

- ***Investment and valuation documents (Request Nos. 1-3, and 5).*** Request Nos. 1-3 and 5

---

[7] Furthermore, as the district court noted in *Visto*, a third-party venture capital firm has "legitimate privacy and competitive business interests in the specifics of how it goes about making investment decisions" and "it is simply not enough to say that . . . privacy interests can be addressed through a protective order." 2007 WL 218771, at *4.

demand all "investment materials" of CREXi and all documents touching CREXi's financial and business health Founder Collective considered before and after Founder Collective's investment.[8] CoStar, however, has failed to articulate any plausible basis for how broad discovery regarding investments, CREXi's business model, or every document Founder Collective considered in its investment decision tie to the claims or defenses in the Underlying Litigation. *See Buckeye Ventures, Inc. v. Trafalgar Cap. Specialized Inv. Fund, Luxembourg*, 2009 WL 10667900, at *1 (S.D. Fla. Dec. 7, 2009) (denying discovery into defendant's "records of . . . financial information and dealings" that were not relevant to the claims at issue).

- ***CREXi and CoStar in general (Request Nos. 4-6).*** CoStar seeks "[a]ll documents and communications . . . Regarding CREXi" and "Regarding CoStar." CoStar has asserted no plausible basis for why ***every*** communication between CREXi and Founder Collective and every internal document and communication regarding CREXi could be relevant (especially because Founder Collective as an early investor, having invested in May of 2015, will likely have a high volume of documents "Regarding CREXi" having nothing to do with the Underlying Litigation). Likewise, CoStar seeks all documents and communications "Regarding CoStar" even though CoStar is a multibillion-dollar corporation with a multi-decade history in the commercial real estate space, and is a direct competitor to CREXi, one of Founder Collective's portfolio companies.

- ***All litigation involving CoStar or CREXi (Request No. 7).*** CoStar seeks all documents and communications related to any litigation involving CoStar or CREXi. CoStar's lawsuits having nothing to do with the Underlying Litigation are irrelevant. Moreover,

---

[8] CoStar's Renewed Subpoena names a laundry list of documents, including all CREXi "business models, road show presentations, pitch books, business plans, forecasts, budgets, variance analyses, or promotional investment materials" (Request No. 1); the terms of all Founder Collective investments, loans or financings in CREXi (Request No. 2); documents concerning any "benefits, costs, and/or risks, whether monetary or nonmonetary, associated with CREXi's entry, growth, or success in the commercial real estate industry (Request No. 3); and all documents reflecting CREXi's "(i) annual reports; (ii) business plans; (iii) comparisons of financial budgets to end results; (iv) growth milestones; (v) performance targets; and (vi) obstacles impeding growth" (Request No. 5).

Founder Collective understands that CoStar affirmatively resisted CREXi's document

requests regarding other litigation that it was involved in, and that the Magistrate Judge

denied a motion to compel such documents. *See* Underlying Litigation, Dkt. 111, at 5-6

(holding that discovery regarding prior lawsuits CREXi sought was "not relevant to the

claims, defenses, and counterclaims at issue in this case"). CoStar's attempt now to

obtain discovery about such lawsuits from a nonparty is improper. Nor can CoStar

plausibly claim that all documents and communications about the Underlying Litigation

(or CoStar's Indian lawsuits against CREXi vendors) are relevant to the alleged conduct

at issue in the Underlying Litigation.[9]

- ***General inquiries regarding CREXi's operations (Request Nos. 8-11).*** These requests
  are primarily aimed at information about the operation of CREXi (i.e., use of agents,
  actions to protect CREXi IP, use of others' IP without permission, and instances of
  copying or scraping data or images). But these requests reach far beyond the specific
  instances of infringement, misappropriation, and breach of contract alleged in the SAC;
  instead, they address far broader topics including general hiring practices, all use of
  others' intellectual property, and all instances of copying or web scraping even if having
  nothing to do with the allegations concerning CoStar's IP and websites. Moreover,
  CoStar has no reasonable basis to believe that **Founder Collective** "is likely . . . [to have]
  responsive documents." *Rawcar Grp., LLC v. Grace Med., Inc.*, 2014 WL 12199977, at
  *4 (S.D. Cal. June 26, 2014). Founder Collective was not involved in CREXi's day-to-
  day operations or in CREXi's creation of listings and so Founder Collective is unlikely to

---

[9] This request would also require Founder Collective to undertake the significant burden of
identifying and logging a large number of privileged communications. To the extent CoStar
seeks documents regarding litigation possessed by Founder Collective due to its role on CREXi's
board, those documents are subject to a claim of privilege or attorney work product by CREXi.
*See IP Telesis Inc. v. Velocity Networks Inc.*, 2012 WL 12886967, at *3 (C.D. Cal. Nov. 5, 2012)
(legal advice provided at board meetings privileged). Founder Collective's discussions with its
own counsel are also privileged. And documents and communications exchanged between
CREXi and Founder Collective (or between their counsel) may also be protected by the common
interest and work-product doctrine. *See United States v. Sanmina Corp.*, 968 F.3d 1107, 1121
(9th Cir. 2020) (third-party disclosures of attorney work product do not necessarily waive
protections).

have responsive information to these requests.

In sum, CoStar cannot in good faith contend that these document requests are narrowly tailored to seek relevant and proportional discovery.

### 3. To the extent CoStar seeks relevant documents, they should be sought from CREXi rather than burdening nonparty Founder Collective.

Even if any of CoStar's document requests encompassed relevant documents, the requests are cumulative of discovery CoStar has already sought from CREXi. If discovery "can be obtained" from a party-in-suit, it is improper to burden a nonparty. *Wimo*, 2016 WL 11507381, at *2; *see also Amini*, 300 F.R.D. at 410 ("[A] court may prohibit a party from obtaining discovery from a non-party if that same information is available from another party to the litigation").[10] And the mere fact that a party has objected to discovery is an insufficient basis to burden a nonparty with duplicative discovery requests—indeed, courts have required a "a showing that the records are obtainable ***only*** through the identified third party." *Heilman v. Lyons*, 2010 WL 5168871, at *1 (E.D. Cal. Dec. 13, 2010); *see also Tresona Multimedia, LLC v. Legg*, 2015 WL 4911093, at *3 (N.D. Ill. 2015) ("A plaintiff does not demonstrate a compelling need to seek duplicative third-party requests simply because a party in the underlying action fails to comply with document requests for the same information.").

Here, CoStar has essentially conceded that its subpoena to Founder Collective is cumulative of party discovery, stating that it issued this Renewed Subpoena because "CREXi is refusing to produce the materials sought by the subpoenas." *See* Hein Decl. Ex. 4 at 1. As a supposed "compromise," CoStar has proposed that Founder Collective should "produce purely internal materials" while CREXi should "produce[] the balance" of the documents. *Id.* But as

---

[10] This legal principle has been adopted throughout the Ninth Circuit. *See, e.g.*, *Moon*, 232 F.R.D. at 638 (finding undue burden to nonparty in part because "plaintiffs can more easily and inexpensively obtain the documents from defendant"); *Duong v. Groundhog Enterprises, Inc.*, 2020 WL 2041939, at *7 (C.D. Cal. Feb. 28, 2020) (same); *NuVasive, Inc. v. Jones*, 2018 WL 6062416, at *2 (S.D. Cal. Nov. 20, 2018) ("Courts have expressed a preference for parties to obtain discovery from one another before burdening non-parties with discovery requests."); *Genus Lifesciences Inc. v. Lannett Co., Inc.*, 2019 WL 7313047, at *4 (N.D. Cal. Dec. 30, 2019) (same); *Soto v. Castlerock Farming & Transp., Inc.*, 282 F.R.D. 492, 505 (E.D. Cal. 2012) (same).

discussed above, any "purely internal materials" of Founder Collective are irrelevant to the claims and defenses in the Underlying Litigation. And the materials that are even arguably relevant, that is, what CoStar calls "the balance" of the requested documents, CoStar concedes can be sought from CREXi.

CoStar has propounded over 200 document requests on CREXi in the nearly three years the Underlying Litigation has been pending. CREXi has produced over 75,000 documents and 100,000 images. Dkt. 444, at 3. As CoStar concedes, CoStar has sought many of the documents at issue here through document requests to CREXi. In response, CREXi has produced documents or objected on relevance and burden grounds. But CoStar has not moved to compel the production of those documents from CREXi. Hein Decl. ¶ 10. Each of CoStar's subpoena requests is matched by one or multiple RFPs to CREXi for which CoStar has received documents or has declined to pursue relief against CREXi. For example, the materials in CoStar's Renewed Subpoena Request Nos. 1, 2, 3, and 5 seeking investment materials and documents regarding the financial and business health of CREXi have also been sought from CREXi in RFP Nos. 45, 46, and 201-203. *See* Hein Decl. Ex. 6 at 20-21 (CoStar's First Set of Requests for Production of Documents to CREXi, dated October 8, 2021); Ex. 7 at 11 (CoStar's Fifth Set of Requests for Production of Documents to CREXi, dated February 7, 2023) (seeking identities of investors and amounts of investments, investment materials, and valuations). As another example, Renewed Subpoena Request Nos. 4 and 8 seek information regarding CREXi's business model, operations, or strategy for obtaining, developing, or publishing listings and the use of vendors for that work. But CREXi already agreed to produce "All Documents relating to the method by which [CREXi] obtained the property listings on [its] Websites (e.g., whether directly from brokers, through Third Parties, or from CoStar Websites or CoStar Databases)" in response to CoStar's RFP No. 83 to CREXi. *Id.* Ex. 6 at 30.

Given that CoStar has sought and received the requested documents from CREXi, or declined to pursue the requests in the face of CREXi's relevance and burden objections, there is no justification to pursue the same burdensome discovery from a nonparty like Founder

Collective. The Court should quash the Renewed Subpoena and require CoStar to seek to justify its document requests through the party discovery process, rather than burden a third party.

**B.     CoStar's Renewed Subpoena is unduly burdensome.**

Rule 45 requires "the court to weigh the burden to the subpoenaed party against the value of the information to the serving party." *Moon*, 232 F.R.D. at 637. As a result, "[s]ubpoenas cannot be overbroad; they must be narrowly tailored to the needs of the case." *Free Stream Media Corp. v. Alphonso Inc.*, 2017 WL 11632962, at *5 (C.D. Cal. May 4, 2017); *see also Angioscore, Inc. v. Trireme Medical. Inc.*, 2014 WL 6706898, at *1 (N.D. Cal. Nov. 25, 2014) ("Upon review of the subpoena, the Court finds that the documents sought are not narrowly tailored . . . and concludes that the subpoena poses an undue burden on [the] non-party . . ."). And as discussed above, the appropriate result in response to "overbroad, and disproportionate subpoenas" is to quash them rather than "attempt to re-draft" them. *Baxalta*, 2016 WL 11529803, at *8.

CoStar's eleven document requests are not even close to "narrowly tailored." CoStar seeks, in ten of its requests, "All Documents and Communications" or "All Documents" related to numerous broad topics including CREXi, CoStar, Founder Collective's investment decision in CREXi, CREXi's value as a company, CREXi's use of agents, any lawsuit involving CoStar or CREXi, and any instance of CREXi scraping images or data or using others' intellectual property (even if it has nothing to do with this case). CoStar seeks this information for a timespan of over eight years—reaching a year before the start of the relevant time period in party discovery between CoStar and CREXi. These requests are thus unduly burdensome on their face.

The *Free Stream Media* decision is comparable. In that case, the court quashed a subpoena because it sought "all documents and communications" concerning the relationship between the defendant and a third party, which potentially included "extremely sensitive and irrelevant technical and business information, customer, market, and competitor information." *Free Stream Media*, 2017 WL 11632962, at *6; *see also Moon*, 232 F.R.D. at 636 (quashing subpoena as overbroad seeking "any and all documents" over a ten-year period because the

requests were "overbroad on [their] face and exceed[ ] the bounds of fair discovery"); *Oyenik v. Corizon Health Inc.*, 2014 WL 12787872, at *2 (D. Ariz. Nov. 20, 2014) (same). Similarly, here, CoStar has sought numerous overbroad topics that implicate sensitive business information of Founder Collective over an eight-year period, including Founder Collective's investment decisions and every document and communication regarding CREXi and CoStar. These requests for "all documents and communications" will require Founder Collective to undertake a disproportionate burden—even greater than the burden to a party given the eight-year time period CoStar demands—to collect, search, review, and produce responsive information to broad discovery topics.

In summary, CoStar's discovery requests are vastly overbroad, seek discovery far beyond any relevant topic, and seek discovery that even CoStar acknowledges can and should be obtained directly from CREXi. CoStar's Renewed Subpoena should be quashed.

### C.   The Renewed Subpoena should be quashed because CoStar's conduct indicates that the subpoena has been issued for the improper purpose of harassing Founder Collective and disrupting its business relations with CREXi.

CoStar's subpoena to Founder Collective should also be quashed for an independent reason: it was apparently served to harass Founder Collective because it is a CREXi investor. *See Mattel*, 353 F.3d at 814 (holding that it is proper to quash subpoena issued to harass rather than to obtain information). Founder Collective is a nonparty that was not involved in any of the alleged conduct CoStar alleges; indeed, Founder Collective is not even mentioned in CoStar's SAC. CoStar's service of seriatim subpoenas on Founder Collective and its wildly overbroad requests show that CoStar is not pursuing legitimate discovery in good faith. *See Amini*, 300 F.R.D. at 412 ("sheer breadth" of subpoena supports improper motive finding). CoStar's subpoena appears to be part of a broader campaign of harassment against CREXi investors, intended to disrupt CREXi's investor relationships. The Court should put an end to that harassment and grant the motion to quash CoStar's subpoena.

**D.      Founder Collective should be awarded reasonable attorneys' fees.**

Founder Collective should recover attorneys' fees reasonably incurred in responding to

CoStar's subpoena. Where the issuing party fails to "take reasonable steps to avoid imposing

undue burden or expense on a person subject to the subpoena[,] [t]he court for the district where

compliance is required ***must*** enforce this duty and impose an appropriate sanction—which may

include lost earnings and reasonable attorney's fees—on a party or attorney who fails to

comply." Fed. R. Civ. P. 45(d)(1) (emphasis added). An award of fees is justified where a party

serves an "exceedingly overbroad" subpoena on a nonparty, especially when it encompasses

documents that could have been sought from a party first. *Duong*, 2020 WL 2041939, at *9

(finding such conduct "exceed[ed] the bounds of 'normal advocacy'"); *see also Casun Invest,*

*A.G. v. Ponder*, 2019 WL 2358390, at *7-*8 (D. Nev. June 4, 2019) (awarding fees because

"[t]he subpoena was clearly overbroad on its face, and, to the extent relevant, improperly sought

documents from nonparty attorneys, rather than from Plaintiff or Dr. Wild through timely

requests for production of documents"); *Straight Path IP Group, Inc. v. Blackberry Ltd.*, 2014

WL 3401723, at *7 (N.D. Cal. July 8, 2014) (failure to act to minimize the expense and burden

on a third party entitled the nonparty to fees). CoStar's issuance of a vastly overbroad subpoena

to Founder Collective, its failure to take reasonable steps to minimize the burden on Founder

Collective, and its pattern and practice of issuing and withdrawing subpoenas to maximize

harassment on CREXi's investors, warrants awarding Founder Collective its reasonable

attorneys' fees incurred.[11]

## V.      CONCLUSION

For the foregoing reasons, the Court should quash CoStar's Renewed Subpoena and

award Founder Collective reasonable attorneys' fees incurred in connection with CoStar's

subpoenas.

---

[11] If the Court grants the request for attorneys' fees, Founder Collective will (absent further
instruction from the Court) first endeavor to resolve the amount by stipulation and, failing that,
submit evidence about fees incurred for the Court's consideration.

Dated: July 21, 2023                    FOUNDER COLLECTIVE GP II, LLC

                                        By Its Attorneys,


                                        /s/ David H. Rich
                                        DAVID H. RICH (BBO #634275)
                                        Todd & Weld LLP
                                        1 Federal Street, 27th Floor
                                        Boston, MA 02110
                                        (617) 720-2626
                                        drich@toddweld.com


                                        PATRICK HEIN (California SBN 254431)
                                        patrick.hein@shearman.com
                                        SHEARMAN & STERLING LLP
                                        535 Mission Street, 25th Floor
                                        San Francisco, CA 94105-2997
                                        Telephone:  415.616.1100

## <u>CERTIFICATE OF SERVICE</u>

I, David H. Rich, hereby certify that on this 21st day of July, the following document was filed using the Court's CM/ECF system.   A copy of this pleading has been served on counsel of record to CoStar Group, Inc., CoStar Realty Information, Inc., and Commercial Real Estate Exchange, Inc. in a certain litigation underlying this ancillary proceeding pending in the Central District of California (No. 2:20-cv-08819 CMB) resulting in service on all counsel of record in this matter.


Date:  July 21, 2023

David H. Rich (BBO # 634275)